UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ALLIED IRISH BANKS, p.l.c.,                          :

                Plaintiff,                  :          03 Civ. 3748 (DAB) (GWG)

    -v.-                                             :          <u>OPINION AND ORDER</u>

BANK OF AMERICA, N.A. and                            :
CITIBANK, N.A.,
                                                     :

                Defendants.                 :
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Allied Irish Banks, p.l.c. ("AIB") brought this action against Citibank, N.A. and Bank of

America, N.A. ("BofA") for claims arising out of a rogue trading scheme perpetrated by one of

AIB's traders, John Rusnack. PricewaterhouseCoopers LLP ("PwC-US") was one of AIB's

auditors. During discovery, BofA served a document subpoena on an entity called

PricewaterhouseCoopers International Limited ("PwCIL"). PwCIL withheld certain responsive

documents under the work product doctrine and attorney-client privilege. BofA then filed this

motion to compel the production of these documents. Shortly thereafter, PwC-US filed a motion

to intervene to stop the disclosure of some of the documents withheld by PwCIL on the ground

that they are protected by the work product doctrine. For the reasons below, BofA's motion to

compel (Docket # 65) is granted in part and denied in part. PwC-US's motion to intervene

(Docket # 77) is granted. Its motion for a protective order will be the subject of further

proceedings as set forth below.

I. <u>BACKGROUND</u>

    A. <u>Facts</u>

    PwCIL is a "UK-registered limited liability company, the members of which are the

independently-organized professional services entities that use the PricewaterhouseCoopers name." See Declaration of Lawrence W. Keeshan, filed Aug. 30, 2007 (Docket # 69) ("Keeshan Decl."), ¶ 5. PwCIL does not provide client-related services, and thus did not provide any services to AIB or its affiliates. Id. ¶¶ 5, 17. Instead, PwCIL "facilitates and coordinates its member firms' activities, including protection of the PricewaterhouseCoopers brand." See Non-Party PricewaterhouseCoopers International Limited Response to Bank of America, N.A.'s Motion to Compel the Production of Documents, filed Aug. 30, 2007 (Docket # 71) ("PwCIL Resp."), at 2; Keeshan Decl. ¶ 5. PwCIL is overseen by its Chief Executive Officer, its Global Board and a group called the Global Leadership Team. Keeshan Decl. ¶ 5.

During the period of time at issue in this case, the Global Board was composed of partners, principals, or employees of PwCIL's member firms, who served for fixed terms and acted as directors under British law. Keeshan Decl. ¶ 7. Members of the Global Board worked principally for their member firms, not the Global Board itself. Id.

The Global Leadership Team consisted of PwCIL's CEO, individuals the CEO appointed to manage PwCIL's affairs, and the Territory Senior Partners of the major PwCIL member firms or regional groupings. Id. ¶ 10. The CEO and "his management team" (but not the Territory Senior Partners) spent substantially all of their time working on PwCIL's affairs, although they remained partners or employees of their member firms and were paid by those firms. Id. The Global Leadership Team acted "both directly and through a number of subordinates." Id. ¶ 12. These "subordinates" were partners or employees of the member firms, some of whom worked full time on PwCIL matters and others of whom divided their time between PwCIL and the member firms. Id.

PwCIL's "Managing Partner – Operations," Amyas Morse, was responsible for PwCIL's risk management with respect to legal issues, and chaired the "Global Operations Committee." Id. ¶ 14. This Committee consisted of operations leaders from larger PwCIL member firms who advised Morse on the needs and priorities of member firms in addition to consulting with each other about common responses to shared risk issues such as litigation and insurance matters. Id. ¶ 15. PwCIL also coordinated assistance between member firms through the Global Board and the Global Leadership Team. Id. ¶ 16.

Lawrence W. Keeshan was both the Global General Counsel for PwCIL and a principal of PwC-US from July 1, 1998 until September 20, 2006. Id. ¶¶ 2-3. PwC-US – along with PricewaterhouseCoopers Ireland Ltd. ("PwC-Ireland") – provided auditing services for AIB and its affiliates. Id. ¶ 17. As Global General Counsel for PwCIL, Keeshan provided legal counsel to the Global Board, the Global Leadership Team and the Global Operations Committee. Id. ¶ 16. Keeshan learned of Rusnack's fraudulent trading scheme in February 2002, id. ¶ 17, and thereafter "PricewaterhouseCoopers-affiliated professionals were contacted by and cooperated with US government agencies conducting civil and criminal investigations into the Allfirst fraud," id. ¶ 18.

B. Procedural History

BofA filed this motion to compel in August 2007.[1] BofA ultimately withdrew its motion

_____

[1]See Notice of Motion by Defendant Bank of America, N.A., filed Aug. 2, 2007 (Docket # 65); Memorandum of Law in Support of Defendant Bank of America, N.A.'s Motion to Compel the Production of Doicuments [sic] By Non-Party Pricewaterhouse Coopers International, filed Aug. 2, 2007 (Docket # 66) ("BofA Mem."). PwCIL filed opposition papers. See Declaration of Sarah L. Cave, filed Aug. 30, 2007 (Docket # 68); Keeshan Decl.; Declaration of William E. White, filed Aug. 30, 2007 (Docket # 70) ("White Decl."); PwCIL Resp. BofA filed reply papers. See Supplemental Declaration of Donald Rosenthal Pursuant to

as to certain documents and now seeks production of the following documents, numbered according to PwCIL's August 2007 privilege log (see Revised Privilege Log, dated Aug. 24, 2007 (attached as Ex. A to White Decl.) ("Revised Privilege Log")): Document ## 1-7, 9, 11-41, 43-47, 49-56, 58-59, 62, 69-71.  See BofA Reply at 21-22.

Shortly after BofA filed its motion to compel, PwC-US filed a motion to intervene in the case in order to obtain a protective order to preclude the disclosure of a subset of these documents: specifically, Document ## 7, 11-17, 19, 22-30, 32-41, 43-47, 49, 52-56, 58, 62.  See Non-Party PricewaterhouseCoopers LLP's Memorandum of Law in Support of Motion to Intervene and for a Protective Order, filed Oct. 3, 2007 (Docket # 80) ("PwC-US Mem."), at 1 n.1.[2]  On December 21, 2007, at the request of the Court, PwCIL submitted copies of the documents to the Court for in camera review.

The documents at issue can be divided into three categories.  The first consists of communications between Keeshan and the Global Board and Global Leadership team regarding AIB.  The second category consists of communications between Keeshan, other persons at

---

28 U.S.C. § 1746, filed Sept. 14, 2007 (Docket # 73); Reply Memorandum of Law in Support of Defendant Bank of America, N.A.'s Motion to Compel the Production of Documents by Non-Party Pricewaterhouse Coopers International, filed Sept. 14, 2007 (Docket # 74) ("BofA Reply").

[2]  See Non-Party PricewaterhouseCoopers LLP's Notice of Motion to Intervene and for a Protective Order, filed Oct. 3, 2007 (Docket # 77); Declaration of Sarah L. Cave, filed Oct. 3, 2007 (Docket # 78); Declaration of Steven M. Witzel, filed Oct. 3, 2007 (Docket # 79) ("Witzel Decl."); PwC-US Mem.  BofA opposed the motion, see Memorandum of Law in Opposition to Non-Party Pricewaterhouse Coopers LLP's Motion to Intervene and for a Protective Order, filed Nov. 2, 2007 (Docket # 83) ("BofA Resp."); Declaration of Donald Rosenthal Pursuant to 28 U.S.C. § 1746, filed Nov. 2, 2007 (Docket # 84), and PwC-US filed a reply, see Non-Party PricewaterhouseCoopers LLP's Reply Memorandum of Law in Further Support of Its Motion to Intervene and for a Protective Order, filed Nov. 16, 2007 (Docket # 86).

PwCIL, and employees of PwC-US, PwC-Ireland and/or PricewaterhouseCoopers LLP (UK) ("PwC-UK"). This category includes documents responding to a request by Keeshan that attorneys from member firms prepare legal summaries of claims against their respective firms. Third are documents sent to or shared with the PricewaterhouseCoopers network's insurance provider, L & F Indemnity Limited. Keeshan Decl. ¶ 28.

## II. DISCUSSION

### A. Adequacy of Privilege Log

Before discussing each of the three categories of documents, we begin by addressing BofA's argument that the insufficiency of some of PwCIL's descriptions in the privilege log should result in a denial of protection. BofA Mem at 14-16.

PwCIL's privilege log contains, as applicable to each document listed, information on the type of document, its date, its author, its recipients, persons copied on the document, persons to whom the document was forwarded, the author of the responsive portion of any attachment, and a description of the subject matter of the document. While the log does not provide every piece of factual information necessary to demonstrate all aspects of the claims of privilege, the log does provide enough detail "to permit a judgment as to whether the document is at least potentially protected from disclosure." United States v. Constr. Prod. Research, Inc., 73 F.3d 464, 473 (2d Cir.1996). Cases rejecting claims of privilege based on the inadequacy of the privilege log alone typically involve an absence of basic information such as names of recipients, dates, or subject matters of documents – or a failure to produce a log at all. See, e.g., Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C., 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007); OneBeacon Ins. Co. v. Forman Int'l Ltd., 2006 WL 3771010, at *3, *7, *8 (S.D.N.Y.

Dec. 15, 2006). While a claim of privilege may be rejected based on lesser inadequacies, the Court exercises its discretion not to do so here in light of the fact that both sides have now made full submissions on the claims of privilege. See, e.g., NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 131 (N.D.N.Y. 2007).

B. Communications Within PwCIL and the Attorney-Client Privilege

The first category of documents consists of communications between PwCIL's in-house counsel, Keeshan, and the Global Board and Global Leadership Team of PwCIL (Document ## 18, 29, 30, 37, 49 and 70-71). PwCIL asserts attorney-client privilege with respect to these documents. We begin by discussing the law governing attorney-client privilege.

1. Law Governing the Assertion of the Attorney-Client Privilege

Because this Court's subject matter jurisdiction is based upon diversity, see Complaint, filed May 23, 2003 (Docket # 1), ¶ 10, state law provides the rule of decision concerning the claim of attorney-client privilege. See Fed. R. Evid. 501; Dixon v. 80 Pine St. Corp., 516 F.2d 1278, 1280 (2d Cir. 1975). While neither party has addressed the choice of law issue in its motion papers, this Court previously applied New York privilege law to a motion to compel in this case, see Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 102-03 (S.D.N.Y. 2007), and both parties cite to cases applying New York law in their memoranda of law. Thus, the Court will apply New York privilege law. See id.

In New York, the statutory codification of the privilege is as follows:

[A]n attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication . . . .

6

N.Y.C.P.L.R. § 4503(a)(1). For the privilege to apply, the communication from attorney to client must be made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." Rossi v. Blue Cross & Blue Shield of Greater N.Y., 73 N.Y.2d 588, 593 (1989). The communication itself must be "primarily or predominantly of a legal character." Id. at 594. "The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 379 (1991).

"The proponent of the privilege has the burden of establishing that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client." Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C., 191 Misc. 2d 154, 166 (N.Y. Sup. Ct. 2002); accord People v. Mitchell, 58 N.Y.2d 368, 373 (1983) (citing cases). A communication between an attorney and the agent or employee of a corporation may be privileged where the agent "possessed the information needed by the corporation's attorneys in order to render informed legal advice." In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 218-19 (S.D.N.Y. 2001) (citing Upjohn Co. v. United States, 449 U.S. 383, 391 (1981)).

"Generally, communications made between a defendant and counsel in the known presence of a third party are not privileged." People v. Osorio, 75 N.Y.2d 80, 84 (1989) (citing cases). Rather, "disclosure of attorney-client communication to a third party or communications with an attorney in the presence of a third party, not an agent or employee of counsel, vitiates the confidentiality required for asserting the privilege." Delta Fin. Corp. v. Morrison, 13 Misc. 3d 441, 444-45 (N.Y. Sup. Ct. 2006).

Under New York law, "the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity." Spectrum Sys., 78 N.Y.2d at 377 (citing cases). It is also the burden of the party asserting a privilege to establish that it has not been waived. See John Blair Commc'ns, Inc. v. Reliance Capital Group, 182 A.D.2d 578, 579 (1st Dep't 1992). Such showings must be based on competent evidence, usually through affidavits, deposition testimony or other admissible evidence. See von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 147 (2d Cir.), cert. denied, 481 U.S. 1015 (1987); Bowne of N.Y. City, Inc. v. AmBase Corp., 150 F.R.D. 465, 472 (S.D.N.Y. 1993). The burden cannot be met by "'mere conclusory or ipse dixit assertions'" in unsworn motion papers authored by attorneys. von Bulow, 811 F.2d at 146 (quoting In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965)).

    2. Discussion

BofA argues that PwCIL has not met its burden of establishing the privilege because, inter alia, PwCIL has not identified in what capacity the recipients of the communications were acting – that is, whether they were acting as members of the Global Board or Global Leadership Team or in their respective capacities at their member firms. See BofA Mem. at 15. As noted, where attorney-client communications are shared with third parties, the privilege is normally extinguished. See, e.g., Osorio, 75 N.Y.2d at 84 (citing cases). Thus, to the extent any of these individuals were acting in their capacities as employees of the member firms, any privilege – assuming it were demonstrated – would be vitiated. In addition, even where materials are shared within a corporate organization, a corporation asserting the attorney-client privilege has the burden of showing "that it preserved the confidentiality of the communication by limiting

dissemination only to employees with a need to know." Bank of N.Y. v. Meridien Biao Bank Tanz. Ltd., 1996 WL 474177, at *2 (S.D.N.Y. Aug. 21, 1996) (citing 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, ¶ 503(b)[04] at 503-49 to 503-50 (1988)).

Here, all of the communications have multiple recipients. PwCIL, however, has provided only the most rudimentary descriptions of the roles and functions of the individuals who received copies of these documents. See Ex. B to White Decl. A description of the function of each individual is indispensable here inasmuch as PwCIL admits to having "acted . . . through" at least some individuals who "divided their time" between PwCIL and their member firms. Keeshan Decl. ¶ 12.

With respect to five of the seven documents (## 18, 29, 30, 37, and 49), the documents were authored by or shared with two individuals – Ann L. MacDougall and Steven M. Witzel – who are each identified only as "[a]n attorney involved with preparing for potential litigation relating to the AIB matter." See Ex. B. to White Decl. A sixth document, Document # 71, was shared with a Michael D. Kelley, who is identified only with the single phrase, "Global Marketing" – a phrase that is nowhere linked to PwCIL. See id. Nor does this phrase explain Kelley's function with respect to these communications, including why it was necessary that he participate in them. Each of these three individuals is also identified as working for PwC-US. See id. PwCIL and PwC-US, however, are separate corporate entities. If a privileged PwCIL attorney-client communication is shared with an individual not acting on behalf of PwCIL, the privilege has been lost (barring the applicability of the common interest rule).[3] Thus, the

---

[3] PwCIL does not assert the common interest rule with respect to any of the documents in this category, however. See PwCIL Resp. at 16. Even if it had, the rule would not apply for the reasons discussed in the next section.

capacity in which these individuals acted when they viewed these documents is critical to the assertion of the privilege. Here, PwCIL has provided no evidence that MacDougall, Kelley or Witzel were acting on behalf of PwCIL, as opposed to acting on behalf of their member firms, when they received these documents. Accordingly, PwCIL cannot assert the attorney-client privilege with respect to these documents. In addition, with respect to Kelley, there is no evidence of his need to know the contents of the communication at issue.

A clearer factual showing has been made with Document # 70, however. With respect to this document, each of the recipients is identified as being a member of or working for either the Global Board or the Global Leadership Team, and the description of their functions suggests that there was a reason for each to participate in the communication. Accordingly, the motion is denied with respect to Document # 70.

The elements of the privilege have otherwise been established with respect to this document. The Court recognizes that BofA is arguing that "it is not at all clear that the communications in question were predominantly legal, rather than business, in nature given that it was in the nature of PwCIL's business to monitor the quality of the services provided by its member firms." BofA Mem. at 10. However, PwCIL has filed a declaration from its General Counsel at the time, Keeshan, stating that this communication (among others) was made "so that [the Global Board and Global Leadership Team] could assess and address potential legal claims and reputational/monetary risks arising from the Allfirst fraud." Keeshan Decl. ¶ 19. Keeshan directed that this document be prepared, and it was "used in the course of providing legal analysis to the Global Board and Global Leadership Team, as well as in discussions with PricewaterhouseCoopers in-house attorneys." Id. ¶ 20. In light of the absence of evidence

contradicting Keeshan's assertions, the Court accepts that PwCIL has met its burden of showing that Document # 70 was made "in order to render legal advice or services to the client." Spectrum Sys. Int'l. Corp., 78 N.Y.2d at 379, and was not for purely business purposes.

C.  Communications Between PwCIL and Personnel of Its Member Firms and the Common Interest Rule

The second category of documents consists of communications between attorneys for PwCIL (including Keeshan) and various personnel from member firms, principally PwC-US, PwC-Ireland and/or PwC-UK.  With respect to these documents, PwCIL asserts protection under the common interest rule.

The common interest rule is not a separate privilege but "'an extension of the attorney client privilege.'"  United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (quoting Waller v. Fin. Corp. of Am., 828 F.2d 579, 583 n.7 (9th Cir. 1987)).  The rule

> serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. . . . Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected. . . . The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter, . . . and it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply . . . .  Neither is it necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney.

Id. at 243-44 (citations and internal quotation marks omitted).

New York courts applying the common interest rule to civil proceedings have often looked to federal case law for guidance.  See, e.g., U.S. Bank Nat'l Ass'n v. APP Int'l Fin. Co., 33 A.D.3d 430, 431 (1st Dep't 2006) ("the federal courts have been instructive in [the doctrine's] applicability"); Stenovich v. Wachtell, Lipton, Rosen & Katz, 199 Misc. 2d 99, 106-08 (N.Y.

Sup. Ct. 2003). Therefore, we look not only to New York but also to federal case law to determine the applicability of the rule.

The common interest rule is intended to allow clients to share information with an attorney for another party who shares the same legal interest. <u>See</u> <u>SR Int'l Bus. Ins. Co. Ltd. v. World Trade Center Prop., LLC</u>, 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002). As is true for any privilege, the common interest rule is narrowly construed. <u>See</u>, <u>e.g.</u>, <u>United States v. Weissman</u>, 195 F.3d 96, 100 (2d Cir. 1999) (<u>per</u> <u>curiam</u>) ("Privileges should be narrowly construed and expansions cautiously extended.") (citing <u>Univ. of Pa. v. EEOC</u>, 493 U.S. 182, 189 (1990)); <u>see also</u> <u>Aetna Cas. and Sur. Co. v. Certain Underwriters at Lloyd's London</u>, 176 Misc. 2d 605, 612 (N.Y. Sup. Ct. 1998) (the common interest rule "is subject to severe limitations and a 'narrow construction'"), <u>aff'd</u>, 263 A.D.2d 367 (1st Dep't 1999). There are two elements of the common interest rule: (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought were designed to further that interest. <u>See</u> <u>Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.</u>, 215 F.R.D. 466, 471 (S.D.N.Y. 2003); <u>Johnson Matthey, Inc. v. Research Corp.</u>, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002). The interest must be "primarily or predominantly . . . legal rather than . . . commercial." <u>U.S. Bank Nat'l Ass'n</u>, 33 A.D.3d at 431 (emphasis omitted) (citing <u>Gulf Islands Leasing</u>, 215 F.R.D. at 471); <u>accord</u> <u>Yemini v. Goldberg</u>, 12 Misc. 3d 1141, 1144 (N.Y. Sup. Ct. 2006) ("business-oriented or personal communications are not covered by the 'common interest' exception").

Before a communication can be protected under the common interest rule, the communication must meet the elements of the attorney-client privilege. <u>Gulf Islands Leasing</u>,

215 F.R.D. at 470. Thus, with regard to the "interest" that must be shown, case law has repeatedly held that communications regarding business matters – even where litigation is pending or imminent – do not qualify for protection from discovery under the common interest rule. See, e.g., id. at 472. As one New York case has held, "[t]here must be a substantial showing by parties attempting to invoke the protections of the privilege of the need for a common defense [as opposed to the mere existence of a] common problem." Finkelman v. Klaus, 2007 WL 4303538, at *4 (N.Y. Sup. Ct. Nov. 28, 2007) (internal quotation marks and citations omitted; bracketing in original).

New York law appears to restrict the doctrine to communications with respect to legal advice "in pending or reasonably anticipated litigation." Aetna, 176 Misc. 2d at 612; see also Parisi v. Leppard, 172 Misc. 2d 951, 956 (Sup. Ct. N.Y. Co. 1997) ("[a] proper assertion of the privilege in a given instance therefore will rest on whether the exchange was for the purpose of giving and receiving shared legal counsel in or in anticipation of litigation, as opposed to transmitting information that was business-oriented . . . in nature") (citing Rossi, 73 N.Y.2d at 593); accord Bank of Am., N.A. v. Terra Nova Ins. Co. Ltd., 211 F. Supp. 2d 493, 498 (S.D.N.Y. 2003); Yemini, 12 Misc.3d at 1142.

There are two subcategories of documents for which PwCIL seeks protection under the common interest rule. The first subcategory – consisting of Document ## 1-7, 9, 11-13, 16-17 – are communications with lawyers and others in member firms that Keeshan says were for the purpose of "coordinat[ing] a consistent legal strategy in response to the Allfirst fraud and . . . potential claims arising from that fraud." Keeshan Decl. ¶ 22. Keeshan says that this effort "was undertaken to avoid, and prepare for, the possibility of litigation." Id. According to

Keeshan, these communications "were made as part of a cooperative effort, and were not directed to any disciplinary or remedial actions that PwCIL might take against any member firm." <u>Id.</u>

The second subcategory – consisting of Document ## 14-15, 19-28, 31-36, 38-41, 43-47, 52-56, 58-59, 62 – are documents arising from a request by Keeshan that attorneys from member firms prepare legal summaries of claims against their respective firms. Keeshan Decl. ¶ 24. Keeshan made this request "to facilitate [Keeshan's] advice to the Global Board and Global Leadership Team with respect to major pending and potential claims facing the . . . network." <u>Id.</u> The summaries "also helped to facilitate a discussion among counsel to the various network firms regarding legal risks – including potential claims – then facing the network and their response to addressing those matters." <u>Id.</u> Keeshan contends in his affidavit that PwCIL and its member firms had "a common interest in avoiding and defending against potential legal claims that could arise from the Allfirst fraud." <u>Id.</u> ¶ 26; <u>accord</u> <u>id.</u> ¶ 23. PwC-US lawyers drafted summaries of the AIB matter that were updated multiple times, <u>id.</u> ¶ 24, and that included, according to Keeshan, only information regarding actual or potential litigation in which "the . . . network faced potential claims that were material to [it]," <u>id.</u> ¶ 25.

PwCIL's assertion of the common interest rule suffers from a critical defect, however. As previously noted, New York state law applies the common interest doctrine only with respect to legal advice "in pending or reasonably anticipated litigation." <u>Bank of Am</u>, 211 F. Supp. 2d at 498 (emphasis, internal quotation marks and citation omitted). Thus, for the purportedly privileged attorney-client communications to remain privileged, PwCIL must show that it "reasonably anticipated" litigation in common with the other firms in its network. Federal law

would require the same showing in this instance because the only interest that is alleged to be common among PwCIL and the member firms is their defense of potential claims against them relating to the Allfirst fraud. If, in fact, PwCIL did not reasonably anticipate any claims against it, there would be no common interest.

Here, PwCIL offers only one piece of evidence on this question: the affidavit from Keeshan, its General Counsel during the relevant time period. While this affidavit states unequivocally that Keeshan anticipated that legal claims might be brought against <u>member firms</u> after the Allfirst fraud, he does not say that he actually anticipated litigation against PwCIL. Rather he states only that "in cases where large potential claims existed against member firms, [he] would <u>generally be concerned about the possibility</u>" of a claim against PwCIL. Keeshan Decl. ¶ 18 (emphasis added).

In the context of the work product doctrine, it has been held that "[w]hether material was prepared 'in anticipation of litigation' requires a determination of the subjective question of whether the party actually thought it was threatened with litigation and the objective question of whether that belief was reasonable." <u>Gulf Islands Leasing</u>, 215 F.R.D. at 475. There is no reason why the same test should not be applied in the context of the common interest doctrine.

We do not need to consider the "objective" question of whether PwCIL could have reasonably believed that it was threatened with litigation (the topic of the bulk of the briefing by the parties on this issue). Here, there is a complete lack of evidence that Keeshan or anyone else at PwCIL <u>actually</u> thought PwCIL was threatened with litigation at the time of these communications – let alone evidence that these communications were prepared in anticipation of that litigation. Thus, PwCIL has not met the subjective component of the test.

Notably, the documents themselves are devoid of any reference to this topic. No affidavit or deposition testimony has been offered from anyone at PwCIL stating that at the time these documents were prepared, PwCIL viewed itself as being threatened with litigation. Keeshan's views as to what claims he "generally" would have been "concerned" about are simply insufficient to show that PwCIL actually thought it was threatened with litigation and engaged in the various communications at issue to further its own interest in not being sued.

Because the common interest extension of the attorney-client privilege is not met, there is no need to address BofA's other arguments attacking the assertion of this privilege.

### D. Applicability of the Work Product Doctrine

What remains to be discussed is the applicability of the work product doctrine to (1) the first two categories of documents for which there has not been a showing of attorney-client privilege, and (2) the third category of documents, consisting of documents characterized as "communications with [PwCIL's] insurer," PwCIL Resp. at 13 n.18; see Keeshan Decl. ¶ 28 (referring to Documents ## 50-51, 69).[4]

While state law governs the question of attorney-client privilege in a diversity action, federal law governs the applicability of the work product doctrine. See, e.g., Weber v. Paduano, 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) (citing cases). The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides that a party is not entitled to obtain discovery of "documents and tangible things that are prepared in anticipation of litigation or for

---

[4] While the Revised Privilege Log asserts the attorney-client and common interest privileges with respect to Document # 51, we discuss only the applicability of the work product doctrine because this is the only argument that PwCIL raises with respect to this document. See PwCIL Resp. at 13 n.18; Keeshan Decl. ¶ 28.

trial by or for another party or its representative" unless the party makes a showing of substantial

need and lack of undue hardship.

PwCIL, however, cannot claim work product protection under Fed. R. Civ. P. 26(b)(3)

because that rule refers to protection given to a "party" or its representative, and PwCIL does not

fit into either category.  See Ramsey v. NYP Holdings, Inc., 2002 WL 1402055, at *6 (S.D.N.Y.

June 27, 2002) (quoting 8 C. Wright, A. Miller & R. Marcus, Federal Practice & Procedure:

Civil § 2024 at 354-56 (2d ed. 1994)).[5]  Nonetheless, courts have recognized that "the

inapplicability of Rule 26(b)(3) does not preclude granting similar immunity under the common-

law work-product doctrine or the 'good cause' balancing test that is incorporated in Federal Rule

of Civil Procedure 26(c)."  Haus v. City of New York, 2006 WL 3375395, at *3 (S.D.N.Y. Nov.

17, 2006) (internal citations omitted).  Notably, Rule 45 specifically permits non-parties to seek

protection from a subpoena that "requires disclosure of privileged or other protected matter."

Fed. R. Civ. P. 45(c)(3)(A)(iii).

Here, however, it is not necessary to explore the contours of what work product

protection would be available to PwCIL under "common law" work product immunity since it

could not prevail even under the Rule 26(b)(3) standard.  Under Rule 26(b)(3), the party

asserting work product protection "bears the burden of establishing its applicability to the case at

hand."  In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379,

384 (2d Cir. 2003) (citing cases).  This includes demonstrating that the doctrine applies and that

it has not been waived.  See, e.g., Allied Irish Banks, 240 F.R.D. at 105.  The burden is a "heavy

---

[5]  As was noted in Ramsey, 2002 WL 1402055, at *6 n. 5, cases that have applied Rule
26(b)(3) to non-parties typically have done so where no litigant raised the issue of the rule's
applicability.

one." In re Grand Jury Subpoenas, 318 F.3d at 384. "Three conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." Allied Irish Banks, 240 F.R.D. at 105 (internal quotation marks, citations and bracketing omitted).

As discussed previously in the context of the common interest doctrine, PwCIL has failed to show that it actually anticipated litigation at the time of the creation of the documents. For this reason alone, its claim to work product privilege must fail.

While it is not necessary to reach the issue, the Court notes that even if PwCIL had shown that it harbored some concern about litigation against itself, PwCIL has not shown that any of the documents were prepared "because of the prospect" of that litigation. United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998).(emphasis in original) (internal quotation marks and citation omitted). Work product protection is not available for documents "that would have been created in essentially similar form irrespective of litigation." Id. at 1202. Thus, even if PwCIL had shown it anticipated litigation on the AIB matter, it failed to provide evidence that the documents would not have been prepared in essentially the same form irrespective of that litigation, as required by Adlman, 134 F.3d at 1202. No testimony or affidavit has been presented to the Court on this point – a failing specifically noted in an earlier decision in this case, Allied Irish Bank, 240 F.R.D. at 107. Significantly, the withheld documents themselves appear to relate to litigation against the member firms – not against PwCIL – and thus it is perfectly plausible that even if PwCIL had not expected to be sued itself, it would have undertaken the same exercise to investigate the claims against its member firms.

18

E.  PwC-US's Motion to Intervene

PwC-US has moved to intervene to assert work product protection with respect to Document ## 7, 11-17, 19, 22-30, 32-41, 43-47, 49, 52-56, 58, 62.  See PwC-US Mem. at 1 n.1. BofA objects to intervention and also to the assertion of work product protection.

1. Law on Intervention

Intervention is available under Fed. R. Civ. P. 24(a)(2) to a party that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Under this rule, intervention is granted where "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties."  MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006).  The only elements disputed here are whether the motion is "timely" and whether PwCIL adequately protects PwC-US's interests.

Here, PwC-US sought to file its motion one week after the briefing was completed on BofA's motion to compel production from PwCIL.  While the delay in making this motion was unnecessary inasmuch as PwC-US was apparently aware of the need for the motion by the time BofA made its own motion, the relatively short delay caused no prejudice to BofA or anyone else.  After considering the factors that govern the judgment of timeliness, see MasterCard Int'l Inc., 471 F.3d at 390, the Court will not deem the motion untimely.

As for the question of adequate representation, it is obvious that PwCIL does not represent PwC-US's interests. As BofA has vociferously (and correctly) argued in the context of the common interest rule, the two entities are independent, and thus they cannot assert privileges on behalf of the other. Indeed, the inadequacy of PwCIL's representation is demonstrated by the fact that, as will be discussed shortly, PwCIL's and PwC-US's showings as to whether each anticipated litigation differ substantially.

Accordingly, the motion to intervene is granted. See, e.g., United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1293 (D.C. Cir. 1980) (motion to intervene granted to permit party to assert work product privilege); In re Katz (Jamil v. United States), 623 F.2d 122, 125 (2d Cir. 1980) (attorney-client privilege). Sackman v. Liggett Group, Inc., 167 F.R.D. 6, 22 (E.D.N.Y. 1996) (joint defense privilege).

2. Merits of the Claim

The documents at issue (or their attachments) were either authored or received by Steven M. Witzel, an attorney for PwC-US. Witzel Decl. ¶ 1. Witzel states that he anticipated that PwC-US would become "involved in litigation" as a "potential defendant[]" in a lawsuit arising out of the Allfirst fraud, id. ¶¶ 6, 7, 12, and that he would not have engaged in the communications at issue had there been no threat of litigation, id. ¶¶ 6, 7, 12, 15. He also states that he expected these materials to be kept confidential within the PwC network, and that they would not be shared with outside firms. Id. ¶ 13.

If PwC-US came within Rule 26(b)(2), its submission would show all the elements required to obtain work product protection. BofA argues, however, that the common law protection afforded to such documents is narrower than the rule-based protection and that,

because BofA is not its adversary, PwC-US should not be entitled to assert the doctrine. See BofA Resp. at 13-16.

There is some force to the argument that there should be lesser protection afforded to work product where an adversary is not seeking to obtain the material at issue. Nonetheless, to vindicate the underlying purposes of the doctrine, case law makes clear that some protection should be afforded. These purposes are "preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases, preventing opponents from free-loading off their adversaries' preparation, and preventing disruption of ongoing litigation." In re Student Fin. Corp., 2006 WL 3484387, at *12 (E.D. Pa. Nov. 29, 2006). Thus, courts should afford work product protection to non-parties if disclosure would "(1) alter attorney behavior, (2) reward sloth, or (3) interfere with ongoing litigation." Haus, 2006 WL 3375395, at *3 (citing Abdell v. City of New York, 2006 WL 2664313, at *4 (S.D.N.Y. Sept. 14, 2006)).

Here, the first two factors favor work product protection. If an attorney representing an accounting firm knew that the adversary of his firm's client might obtain his work product, he would understandably be more circumspect in creating such work product in the future. Even though the accounting client's adversary is not the accountant's adversary, there is a close relationship between an accounting firm and its client, and an attorney for an accounting firm would naturally not wish to create material that could be used to the detriment of the firm's client. Of course, the "freeloader" problem exists here as well, even though BofA is not now an adversary. If BofA can show no substantial need for the materials and no undue hardship in obtaining them, there does not seem to be a reason to give BofA the advantage of PwC-US's diligence as expressed in its work product. Accordingly, the Court will accord work product

protection to these materials.

As to the question of whether BofA has shown a "substantial need" for any of these materials and "undue hardship" in trying to obtain them by other means, BofA is obviously at a disadvantage in making this argument since it cannot examine the materials. The Court too finds itself unable to make an intelligent assessment of these questions based on its in camera review because of its lack of knowledge regarding many of the matters recounted in the documents. Accordingly, the Court will defer a ruling on the questions of "substantial need" and "undue hardship" to allow for fuller disclosure from PwC-US to BofA regarding the contents of the documents at issue. The mechanism for this disclosure will be discussed at a conference that will be held on April 7, 2008 at 11:00 a.m. in Courtroom 17-A, 500 Pearl Street, New York New York. Following the disclosure, BofA will be given a new opportunity to seek to overcome the work product protection afforded the documents.

Conclusion

Bank of America's motion to compel (Docket # 65) is granted in part and denied in part. PwC-US's motion to intervene (Docket # 77) is granted. Its motion for a protective order is disposed of as set forth above.

SO ORDERED.

Dated: March 26 2008
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

protection to these materials.

As to the question of whether BofA has shown a "substantial need" for any of these materials and "undue hardship" in trying to obtain them by other means, BofA is obviously at a disadvantage in making this argument since it cannot examine the materials. The Court too finds itself unable to make an intelligent assessment of these questions based on its in camera review because of its lack of knowledge regarding many of the matters recounted in the documents. Accordingly, the Court will defer a ruling on the questions of "substantial need" and "undue hardship" to allow for fuller disclosure from PwC-US to BofA regarding the contents of the documents at issue. The mechanism for this disclosure will be discussed at a conference that will be held on April 7, 2008 at 11:00 a.m. in Courtroom 17-A, 500 Pearl Street, New York New York. Following the disclosure, BofA will be given a new opportunity to seek to overcome the work product protection afforded the documents.

Conclusion

Bank of America's motion to compel (Docket # 65) is granted in part and denied in part. PwC-US's motion to intervene (Docket # 77) is granted. Its motion for a protective order is disposed of as set forth above.

SO ORDERED.

Dated: March 26, 2008
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

22