```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ALLIED IRISH BANKS, p.l.c.                     :

                    Plaintiff,                 :  03 Civ. 3748 (DAB) (GWG)

        -v.-                                   :  OPINION AND ORDER

BANK OF AMERICA, N.A. and
CITIBANK, N.A.,                                :

                    Defendants                 :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Allied Irish Banks, p.l.c. ("AIB") brought this suit against Citibank, N.A. ("Citibank") and Bank of America, N.A. seeking damages arising out of a rogue trading scheme perpetrated by one of AIB's traders, John Rusnak. The scheme is alleged to have resulted in $691 million in losses to AIB. Bank of America, N.A. is no longer a party to the action. Citibank now moves to strike AIB's demand for trial by jury.[1] For the reasons discussed below, Citibank's motion is

---

[1] See Notice of Citibank, N.A.'s Motion to Strike Allied Irish Banks p.l.c's Demand for Trial by Jury, filed Jan. 27, 2012 (Docket # 203); Declaration of Alida Y. Lasker, filed Jan. 27, 2012 (Docket # 204) ("Lasker Decl."); Declaration of Christopher L. Culp, Ph. D, filed Jan. 27, 2012 (Docket # 205); Memorandum of Law in Support of Citibank N.A.'s Motion to Strike Allied Irish Banks, p.l.c.'s Demand for Trial by Jury, filed Jan. 27, 2012 (Docket # 206) ("Def. Mem. of Law"); Declaration of Jeffrey W. Lang in Support of AIB's Opposition to Citibank's Motion to Strike AIB's Demand for Trial by Jury, filed Mar. 2, 2012 (Docket # 210) ("Lang Decl."); Declaration of Chris Christodoulou, filed Mar. 2, 2012 (Docket # 211); Declaration of Riccardo Gomes, filed Mar. 2, 2012 (Docket # 212); Declaration of Marjorie E. Gross, filed Mar. 2, 2012 (Docket # 213) ("Gross Decl."); AIB's Memorandum of Law in Opposition to Citibank, N.A.'s Motion to Strike AIB's Demand for Trial by Jury, filed Mar. 2, 2012 (Docket # 214) ("Opp. Mem. of Law"); Reply Memorandum of Law in Support of Citibank N.A.'s Motion to Strike Allied Irish Banks, p.l.c.'s Demand for Trial by Jury, filed Mar. 20, 2012 (Docket # 218) ("Reply"); Declaration of Matthew C. Vogele, filed Mar. 20, 2012 (Docket # 219) ("Vogele Decl."); Reply Declaration of Christopher L. Culp, Ph. D, filed Mar. 20, 2012 (Docket # 220); Supplemental Declaration of Jeffrey W. Lang in Support of AIB's Opposition to Citibank's Motion to Strike AIB's Demand for Trial by Jury, filed Apr. 2, 2012 (Docket # 221); AIB's Surreply Memorandum of Law in Opposition to Citibank, N.A.'s Motion to Strike AIB's Demand for Trial by Jury, filed Apr. 2, 2012 (Docket # 222) ("Surreply"); Memorandum of Law

granted.[2]

I.     BACKGROUND

In its Amended Complaint, AIB alleges six claims for relief against Citibank and Bank of America, N.A.: (1) fraud and fraudulent concealment, see Amended Complaint, filed Oct. 22, 2009 (Docket # 119) ("Compl.") ¶¶ 244-255; (2) aiding and abetting fraud, see id. ¶¶ 256-260; (3) aiding and abetting breach of fiduciary duty and duty of loyalty, see id. ¶¶ 261-266; (4) rescission and restitution for lack of authority and lack of consideration, see id. ¶¶ 267-270; (5) money had and received, see id. ¶¶ 271-274; and (6) unjust enrichment, see id. ¶¶ 275-278.  The claim identified as "aiding and abetting breach of fiduciary duty and duty of loyalty" was dismissed prior to the filing of the Amended Complaint, see Allied Irish Banks, P.L.C. v. Bank of America, N.A, 2006 WL 278138, at *12-13 (S.D.N.Y. Feb. 2, 2006), though AIB included it in the Amended Complaint to "preserve its rights, including its rights on appeal," Compl. at 46 n.1.  The remaining claims other than the first two claims are equitable in nature and AIB has conceded that it has no right to a jury with respect to these claims.  See Opp. Mem. of Law at 38. Thus, the question of the availability of a jury is limited to AIB's claims of fraud and fraudulent concealment, and aiding and abetting fraud.

---

in Response to Allied Irish Banks, p.l.c's Surreply and in Further Support of Citibank, N.A.'s Motion to Strike Allied Irish Banks, p.l.c.'s Demand for Trial by Jury, filed Apr. 11, 2012 (Docket # 223).

[2] This motion is being decided by means of an order rather than a report and recommendation because a decision as to whether a party is entitled to a jury trial is not a dispositive matter under 28 U.S.C. § 636(b)(1).  See Fed. R. Civ. 72(a); Deslauriers v. Chertoff, 2009 WL 3418525, at *1 n.1 (D. Me. Oct. 20, 2009) (citing cases); In re Dwight's Piano Co., 2008 WL 5428008, at *1 (S.D. Ohio Dec. 24, 2008); United States v. Carlson, 2006 WL 2869122, at n.1 (D. Colo. Oct. 6, 2006) (citing cases); Harrington v. Wilber, 384 F. Supp. 2d 1321, 1323 (S.D. Iowa 2005).

According to AIB's complaint, John Rusnak was hired as a foreign exchange trader at Allfirst Bank ("Allfirst"), a former subsidiary of AIB, in 1993.  Compl. ¶¶ 1, 41.  He was hired to trade "foreign exchange for Allfirst's own account," – that is, "proprietary" trading.  Id. ¶ 41.  There are three general types of foreign exchange transactions.  See id. ¶ 23.  Spot transactions "involve the purchase of one currency with another currency, and are settled within two business days of the trade."  Id. ¶ 24.  Forward transactions are similar to spot transactions, except that they settle at some point in the future.  Id. ¶ 25.  Foreign exchange options give the purchaser the right, but not the obligation, to buy or sell currency at a specified  price on or before a specified date in the future.  Id. ¶ 26.  In exchange for this right, the option purchaser pays the option seller an up-front payment, called a "premium."  Id.

On March 28, 2000, Citibank and Allfirst entered into an International Foreign Exchange Master Agreement (IFEMA).  See The 1997 International Foreign Exchange Master Agreement, dated Mar. 28, 2000 (annexed as Ex. F to Lasker Decl.) ("IFEMA").  The IFEMA is a form master agreement that was drafted by the Financial Markets Lawyers Group and adopted by the Foreign Exchange Committee ("FX Committee").  See Gross Decl. ¶ 1; Marjorie E. Gross, Standard FX Forms Help Documentation Task, Futures and Derivatives Law Report, Dec. 1996 ("Standard FX Forms") (annexed as Ex. 3 to Lang Decl.) at 14-15.  Citibank was a member of the FX Committee during the period relevant to this lawsuit.  Gross Decl. ¶¶ 2-3.  It is undisputed that the IFEMA covers spot transactions and forward transactions.  The FX Committee published two other form agreements: the International Currency Options Market Master Agreement (ICOM) and the Foreign Exchange and Options Master Agreement (FEOMA).  See Standard FX Forms at 14-15; Gross Decl. ¶¶ 4-5.  Unlike the IFEMA, the ICOM and FEOMA agreements include provisions specifically directed to the treatment of option

3

transactions.  See Gross Decl. ¶¶ 20, 21, 24, 28.

The IFEMA signed by Citibank and Allfirst contained a jury waiver provision which states: "Waiver of Jury Trial.  Each Party irrevocably waives any and all right to trial by jury in any Proceedings."  See IFEMA at CITI-AIB 131 § 9.3 (underlining in original).  "Proceedings," in turn, are defined as "any suit, action or other proceedings relating to the Agreement or any FX transaction."  IFEMA at CITI-AIB 121.  "FX Transaction" is an abbreviation for "foreign exchange transaction" and is defined as:

> any transaction between the Parties for the purchase by one Party of an agreed amount in one Currency against the sale by it to the other of an agreed amount in another Currency, both such amounts either being deliverable on the same Value Date or, if the Parties have so agreed in Part VI of the Schedule, being cash-settled in a single Currency, which is or shall become subject to the Agreement and in respect of which transaction the Parties have agreed (whether orally, electronically or in writing): the Currencies involved, the amounts of such currencies to be purchased and sold, which Party will purchase which Currency and the Value Date.

IFEMA at CITI-AIB 120.[3]

To support its two fraud-related claims, AIB makes allegations regarding Citibank's alleged concealment of its foreign exchange website and Citibank's alleged corruption of the confirmation process.  See Compl. ¶¶ 62-79, 84-101.  AIB does not contend it has a right to a jury trial with respect to these claims, however.  See Opp. Mem. of Law at 3 n.2.  Accordingly, what remains are AIB's claims regarding what it terms "sham options" that Citibank transacted

---

[3] On September 1, 2000, Citibank and Allfirst entered into a prime brokerage services agreement ("PBA").  See Customer Agreement for Foreign Exchange Prime Brokerage Services, dated Sept. 1, 2000 (annexed as Ex. E to Lasker Decl.).  The final paragraph of the agreement states "EACH PARTY . . . WAIVES ANY RIGHT TO JURY TRIAL WITH RESPECT TO ANY ACTION ARISING OUT OF THIS AGREEMENT OR ANY TRANSACTION HEREUNDER."  Id. at CITI-AIB 107 (capitalization in original).  Because we find that the IFEMA jury waiver applies here, it is not necessary to address Citibank's argument regarding the applicability of the jury waiver in the PBA.

with Rusnak. See Compl. ¶¶ 102-222. AIB alleges that these sham options provided Rusnak with tens of millions of dollars that enabled him to continue his foreign exchange trading and damage AIB further. AIB identifies three different types of "sham options" that Citibank personnel allegedly engineered with Rusnak. First, it alleges that Citibank conducted four "disguised cash advances" with Rusnak totaling approximately $80 million. Id. ¶¶ 132-152. Second, it alleges that Citibank provided Rusnak with a "synthetic loan" in the amount of approximately $125 million. Id. ¶¶ 164-179. Third, it alleges that Citibank created certain "phony trades" to help Rusnak conceal his trading activity from Allfirst. Id. ¶¶ 199-222.

## II.   APPLICABLE LAW

"When asserted in federal court, the right to a jury trial is governed by federal law. Although the right is fundamental and a presumption exists against its waiver, a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily." Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 188 (2d Cir. 2007) (citations omitted). In considering whether the waiver of a right to a jury trial was knowing and voluntary, courts must consider: "1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver." Morgan Guar. Trust Co. of N.Y. v. Crane, 36 F. Supp. 2d 602, 603-04 (S.D.N.Y. 1999) (citing Sullivan v. Ajax Navigation Corp., 881 F. Supp. 906, 911 (S.D.N.Y. 1995)); accord Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 705 (S.D.N.Y. 2011). "The burden of proving that a waiver was knowing and intentional rests with the party attempting to enforce the purported waiver." Lehman Bros. Holdings Inc. v. Bethany Holdings Grp., LLC, 801 F. Supp. 2d 224, 229 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Although some

courts state that jury waivers are construed narrowly, courts have not hesitated to enforce jury waivers as written. See, e.g., Wechsler v. Hunt Health Sys., Ltd., 2003 WL 21878815, at *6 (S.D.N.Y. Aug. 8, 2003) ("The language of enforceable waiver provisions must be construed literally.").

The parties make arguments regarding whether the definition of "FX Transaction" in IFEMA covers option contracts. It is not necessary to reach these arguments, however, because we conclude that the claims in this case "relat[e] to" spot and forward foreign exchange transactions, which AIB agrees are governed by the IFEMA. Also, because AIB does not dispute that it entered into the IFEMA jury waiver "knowingly and voluntarily," we do not discuss that question further.

III.     DISCUSSION

At issue is whether this lawsuit and its fraud claims "relat[e] to" a foreign exchange transaction governed by the IFEMA. IFEMA at CITI-AIB 121, 131. In various contexts, courts have recognized that the term "relate to" has a "broad" meaning, including merely having "a connection with" the designated item. See Tufino v. N.Y. Hotel and Motel Trades Council and Hotel Ass'ns of the N.Y.C. AFL-CIO Local 6, 223 A.D.2d 245, 247 (1st Dep't 1996) (citations omitted); accord Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (the meaning of "relating to" is "a broad one – 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . .'") (quoting, Black's Law Dictionary 1158 (5th ed. 1979)); District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 129 (1992) (the phrase "relate to" is "deliberately expansive") (internal quotation marks and citations omitted).

In construing the term "related to" in an insurance contract, the Second Circuit contrasted

"related to" with the narrower "arising out of" and described the phrase as follows:

> The term "related to" is typically defined more broadly [than "arising out of"] and is not necessarily tied to the concept of a causal connection. Webster's Dictionary defines "related" simply as "connected by reason of an established or discoverable relation." Webster's Third New International Dictionary [1916 (1986)]. The word "relation," in turn, as "used esp[ecially] in the phrase 'in relation to,' " is defined as a "connection" to or a "reference" to. Id. at 1916. Courts have similarly described the term "relating to" as equivalent to the phrases "in connection with" and "associated with," see Jackson v. Lajaunie, 270 So.2d 859, 864 (La.1972), and synonymous with the phrases "with respect to," and "with reference to," see Phoenix Leasing, Inc. v. Sure Broad., Inc., 843 F. Supp. 1379, 1388 (D. Nev.1994), aff'd, 89 F.3d 846 (9th Cir.1996), and have held such phrases to be broader in scope than the term "arising out of." See Jackson, 270 So.2d at 864 (" 'In connection with' is a broader term than 'arising out of the use of the premises for the purposes' of a service station . . . . This [injury] was linked to the station, associated with the station, related to the station, and, in the absence of a new and restrictive definition of an old and well understood word, connected with the station." (internal citations and footnote omitted)); cf. Cameron Mut. Ins. Co. v. Skidmore, 633 S.W.2d 752, 753 (Mo. Ct. App.1982) ("It appears to us that 'in connection with' [any premises] has a broader meaning than 'arising out of any premises.' ").

Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (some alterations in original); see generally In re MarketXT Holdings Corp., 336 B.R. 39, 62 (Bankr. S.D.N.Y. 2006) (" Courts have construed broad jury waiver provisions to extend to non-contract claims that 'relate to' the relationship between the parties.").

The parties disagree on whether our inquiry should be into whether this "suit" or "action" relates to a foreign exchange transaction (Citibank's proposed inquiry), see Def. Mem. of Law at 12-13; Reply at 6-10, or whether we should look at the particular fraudulent transactions to see if each viewed separately relates to a foreign exchange transaction (AIB's proposed inquiry), see Opp. Mem. of Law at 20-23; Surreply at 16-17.  The contract language itself waives the jury right with respect to any "suit" or "action" relating to an FX transaction.  IFEMA at CITI-AIB 121, 131.  Thus, there is some warrant for interpreting the contractual waiver literally and

examining only whether the lawsuit as a whole relates to "any" foreign exchange transaction. But the Court finds it unnecessary to reach this issue inasmuch as even using AIB's proposed methodology – that is, examining each allegedly fraudulent transaction separately – the Court finds the jury waiver to apply.

As noted, there are essentially three allegedly fraudulent transactions for which AIB seeks a jury trial: the "disguised cash advances," Compl. ¶¶ 109-24, 132-52; the "synthetic loan," id. ¶¶ 153-79; and the "phony trades," id. ¶¶ 199-222.  While each of these took the form of an option transaction or contract, it is undisputed that each allegedly fraudulent transaction included a foreign exchange transaction governed by the IFEMA.  The "disguised cash advances" included two spot trades and a forward trade that the parties have called a "forward roll."  See Compl. ¶¶ 121-22; Surreply at 25.  AIB agrees that this "forward roll" was "an FX transaction" subject to IFEMA and was a "step" in the "disguised cash advance" scheme.  Surreply at 24-25.  The "synthetic loan" involved a spot trade sometimes called a "hedge trade" or "spot hedge."  See Surreply at 19; Reply at 13; Def. Mem. of Law at 19; Expert Report of Klaus Said, dated August 15, 2011 (annexed as Ex. 1 to Vogele Decl.) ("Said Report") ¶¶ 68-69.  AIB agrees that "this spot hedge is an FX Transaction" under the IFEMA and that, when used in connection with the sham option, "the spot hedge assumed a role in carrying out [the] fraudulent purpose" of the sham option contract.  Surreply at 19-20; accord Said Report ¶¶ 69, 80.  Finally, the "phony trades" of May 2001 relied on two spot trades, referred to as the "Afternoon Engineered Trades," Compl. ¶ 216, that are also governed by the definition of an "FX transaction" in the IFEMA.  Here, too, AIB agrees that these trades were "central components" of the "phony trade" scheme.  Surreply at 18; accord Compl. ¶ 219 (had Citibank refused to conduct the "afternoon engineered trades," "Rusnak's scheme would have been foiled").

In other words, all three of the "sham option" schemes had a spot or forward trade as a component and could not have been conducted without that spot or forward trade. It thus follows that the fraud claims as to each of these transaction "relate to" a spot or forward trade and thus that the claims "relate to" an FX transaction under the IFEMA.

AIB argues that the "afternoon engineered trades" in the "phony trades" of May 2001 were not actually "genuine." Surreply at 18. It points to the fact that these trades were a mere "byproduct of Citibank's manipulation of its trading system" and were not the product of an "arms-length transaction." Id. AIB stresses that the only purpose of creating these trades was "to produce phony positions and phony documentation." Id. Yet AIB does not contest that these trades – had they been done for a proper purpose – were governed by the definition of FX transaction in the IFEMA or that they were covered by its terms. Nor does it contest that Citibank provided Rusnak with confirmation of these trades. Id. Its argument thus boils down to the proposition that we should ignore the plain language of the IFEMA when it is alleged that the purpose of a particular transaction was illegitimate. The Court rejects this argument, however, as unauthorized by the language agreed to by the parties in the IFEMA. In other words, if, as is true here, a transaction comes within the definition of "FX transaction," then it is governed by the IFEMA even if a party contends that the transaction had no legitimate purpose.

AIB argues more generally that it could not have "reasonably anticipated" that the IFEMA jury waiver might apply to "independent option contracts whenever those options were accompanied by a spot hedge." Surreply at 20, 25, 26. It focuses on the fact that the allegedly fraudulent transactions came about as a result of option "contract[s]" and argues that its claims therefore cannot "relate[] to" an FX transaction. Id. at 17; see also id. at 25 (the "source" of AIB's claim is "the sham option contracts" rather than any lone FX transaction). It also notes

9

the availability of the ICOM and the FEOMA, which contain provisions specifically governing option contracts. Id. at 7-9. Finally, it points to the case of Cohn v. Adler, 139 A.D.2d 481, 482-83 (2d Dep't 1988), as standing for the proposition that a court should not import a jury waiver from one agreement (the IFEMA contract) into another agreement (the "sham" option transaction). See Surreply at 21.

Here, however, unlike Cohn, there is no separate written contract that governed Rusnak's option transaction with Citibank – a contract that might have provided some indication of intent one way or the other on the jury waiver question. In other words, while Cohn emphasized that the written contract at issue in that case (which did not include a jury waiver) could have "included" a statement incorporating a prior jury waiver, see 139 A.D.2d at 483, the option transactions here were not memorialized in a separate contract. The parties cannot be viewed as having expressed an intent to override the plain language from IFEMA from their failure to document their options transaction formally or their failure to enter into an ICOM or FEOMA contract. The existence of the form ICOM and FEOMA contracts similarly does not shed light on the parties' intentions when they entered into the IFEMA. In the end, we must be guided by the language of the IFEMA itself.

AIB's argument on this point might have more force if AIB were suing for breach of the option contracts themselves. AIB brings no such claim, however. Instead, it has brought claims that raise a host of allegations regarding how these option contracts were actually shams that supported Rusnak's improper trading and that were the basis for Citibank's fraudulent conduct. In each instance the allegations assert that an FX transaction was among the transactions used to carry out the allegedly fraudulent actions by Citibank. Thus, we are constrained to conclude that each of AIB's claims relates to an FX transaction. AIB agreed in writing to waive it right to

trial by jury in "any . . . action . . . relating to . . . any FX transaction." IFEMA at CITI-AIB 121, 131,. The fact that AIB's claims also relate to non-IFEMA transactions does not negate the broad jury waiver provision AIB bound itself to in the IFEMA.

IV.     CONCLUSION

For the foregoing reasons, the motion to strike AIB's demand for trial by jury (Docket # 203) is granted.

Dated:  July 12, 2012

       New York, New York

                                        _____
                                        GABRIEL W. GORENSTEIN
                                        United States Magistrate Judge

trial by jury in "any . . . action . . . relating to . . . any FX transaction." IFEMA at CITI-AIB 121, 131,. The fact that AIB's claims also relate to non-IFEMA transactions does not negate the broad jury waiver provision AIB bound itself to in the IFEMA.

IV.   CONCLUSION

For the foregoing reasons, the motion to strike AIB's demand for trial by jury (Docket # 203) is granted.

Dated: July 12, 2012

New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge